UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GRANT WALKER, et al., on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 04-cv-436-JPG |
| MONSANTO COMPANY PENSION PLAN, et al., | Consolidated with: Case No. 05-cv-736-JPG Case No. 06-cv-3-JPG |
| Defendants. | Case No. 06-cv-139-JPG |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter is before the Court on the motion for judgment on the pleadings brought by Defendants Solutia Inc. Employees' Pension Plan, Monsanto Company Pension Plan, Monsanto Company, Pharmacia Cash Balance Pension Plan, Pharmacia Corporation, Pharmacia and Upjohn Company, and Pfizer, Inc. (Doc. 224).  Defendants seek dismissal of Counts VII, VIII, and IX of the operative complaint in this cause, alleging age discrimination in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  As Defendants argue correctly, those claims are due to be dismissed under *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636 (7th Cir. 2006).  Accordingly, the motion is **GRANTED** and Counts VII, VIII, and IX of the complaint are **DISMISSED with prejudice**.

Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The pleadings for purposes of a Rule 12(c) motion include the complaint, the answer, and any written instruments attached to the pleadings as exhibits.  *See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d

449, 452-53 (7th Cir. 1998).  The main difference between a Rule 12(c) motion and a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure is that the latter may be filed before an answer to a complaint is filed, whereas a Rule 12(c) motion may be filed "after the pleadings are closed but within such time as not to delay the trial."  *Id*. at 452 n.3 (quoting Fed. R. Civ. P. 12(c)).  Otherwise, however, a Rule 12(c) motion is evaluated "under the same standard as a motion to dismiss under [Rule 12(b)(6)]."  *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995).  Thus, a court, in ruling on a motion for judgment on the pleadings, must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).  Likewise, the court must "view the facts in the complaint in the light most favorable to the nonmoving party."  *GATX Leasing Corp.*, 64 F.3d at 1114.  A court may "grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'"  *Northern Ind. Gun & Outdoor Shows*, 163 F.3d at 452 (quoting *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)).

The employee benefit plans at issue in this case, specifically, the Solutia Inc. Employees' Pension Plan, Monsanto Company Pension Plan, and Pharmacia Cash Balance Pension Plan, are so-called "cash balance" plans, which means that plan participants' benefits are computed in the form of periodic hypothetical credits to a hypothetical participant account.  *See Donaldson v. Pharmacia Pension Plan*, 435 F. Supp. 2d 853, 857 (S.D. Ill. 2006) (quoting *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 758 (7th Cir. 2003)) (explaining that "[a] typical cash balance pension plan purports to compute an employee's accrued benefit as a hypothetical account balance, to which putative 'pay credits' and 'interest credits' are added each year.  In

2

truth, 'the employee has no actual account, the employer makes no contributions to an employee account, and so there is no account balance to which interest might be added.'").  "[A]lthough a cash balance plan has superficial similarities to an individual account plan or defined contribution plan, legally it is a defined benefit plan for ERISA purposes." *Id.* (citing *Berger*, 338 F.3d at 757-58).  *See also* 29 U.S.C. § 1002(35).

Under ERISA § 204, 29 U.S.C. § 1054, a defined benefit plan is deemed to be age discriminatory "if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age."  29 U.S.C. § 1054(b)(1)(H)(i).  In recent years controversy has arisen about whether the term "benefit accrual" for purposes of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), is synonymous with the term "accrued benefit" for purposes of ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A), that is, the annuity a participant in a defined benefit plan is entitled to collect upon attaining normal retirement age, which is to say age 65.  *See* 29 U.S.C. § 1002(24).  If so, the argument goes, cash balance plans are inherently discriminatory against older employees.  Because the accrued benefit in a defined benefit plan must be expressed as an annuity payable at age 65, cash balance plans necessarily discriminate against employees who are closer to normal retirement age than employees who are further from retirement age because credits to a younger employee's cash balance account, expressed as an annuity payable at age 65, are automatically more valuable than the same credits allocated to an older employee's account.  A younger employee simply is entitled to more years of interest on the same employer contribution to his or her cash balance account than is an older employee.  As one judicial decision puts it, "In terms of an age 65 annuity, the interest credits will always be more valuable for a younger employee as opposed to an older employee . . . . There is no dispute about the underlying arithmetic of cash

3

balance arrangements: each year, as a cash balance participant ages, the same contribution made for her in the previous year declines in value in annuity terms." *Cooper v. IBM Personal Pension Plan*, 274 F. Supp. 2d 1010, 1021 (S.D. Ill. 2003) (quoting Edward A. Zelinsky, *The Cash Balance Controversy*, 19 Va. Tax Rev. 683, 733 (2000)).

In *Cooper* the United States Court of Appeals for the Seventh Circuit rejected the view that the term "benefit accrual" for purposes of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), is synonymous with the term "accrued benefit" for purposes of ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A). While acknowledging that a cash balance plan is a defined benefit plan and not a "defined contribution plan" or "individual account plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), the Seventh Circuit reasoned that a cash balance plan should be treated equivalently to a defined contribution plan for purposes of ERISA's age discrimination provisions, notwithstanding the fact that in a defined contribution plan, unlike a cash balance plan, contributions to participant accounts are actual, not hypothetical. As the court put it, the legal treatment of a plan for purposes of ERISA age discrimination rules should not depend on whether "the account balances are book entries rather than cash." 457 F .3d at 638. Accordingly, the court held that age discrimination in a cash balance plan is to be tested under the standard for defined contribution plans set out in ERISA § 204(b)(2)(A), 29 U.S.C. § 1054(b)(2)(A), which states that "[a] defined contribution plan satisfies the requirements of this paragraph if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(2)(A). The *Cooper* court reasoned that "[i]nterest is not treated as age discrimination for a defined-contribution plan, and . . . it should not be treated as discriminatory for a defined-benefit plan either. The phrase

4

'benefit accrual' reads most naturally as a reference to what the employer puts in (either in absolute terms or as a rate of change), while the defined phrase 'accrued benefit' refers to outputs after compounding."  457 F .3d at 638-39.  In other words, "benefit accrual" is "a phrase dealing with inputs."  *Id*. at 639.  "As long as we think of 'benefit accrual" as referring to what the employer imputes to the account – an understanding reinforced by the use of the word 'allocation' in the subsection addressing defined-contribution plans – there is no statutory difference between the treatment of economically equivalent defined-benefit and defined-contribution plans."  *Id*.  "For defined-benefit plans, where the account is an accounting entry rather than cash, 'benefit accrual' matches the money 'allocated' to a defined-contribution plan."  *Id*.

Counts VII, VIII, and IX of the operative complaint do not allege any reduction in employer inputs to participants' accounts by reason of age and instead allege merely that the actuarial value of the interest credited those accounts decreases as participants near retirement age.  However, as *Cooper* makes clear, this is simply a function of the "time value of money," not age discrimination, so that those counts of the complaint must be dismissed.  457 F .3d at 640.  *See also Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 69 (3d Cir. 2007) (quoting *Cooper*, 457 F.3d at 639) (holding with respect to the terms "benefit accrual" and "accrued benefit" as used in ERISA that there is "no indication that Congress intended that courts and administrators use these phrases interchangeably . . . . [T]he phrase 'benefit accrual' reads most naturally as a reference to what the employer puts in . . . , while the defined phrase 'accrued benefit' refers to outputs after compounding."); *Sunder v. U.S. Bank Pension Plan*, No. 4:05CV01153 ERW, 2007 WL 541595, at *6 (E.D. Mo. Feb. 16, 2007) ("[T]he term ['rate of benefit accrual,['] as applied to cash balance plans, is best read as referring to the employer's

5

contribution to the plan, and not the benefit the employee receives upon retirement."); *Finley v. Dun & Bradstreet Corp.*, 471 F. Supp. 2d 485, 490 (D.N.J. 2007) ("[29 U.S.C.] § 1054(b)(1)(H) prohibits reduction in benefit accrual which . . . is the amount that the employer puts in.  It does not apply to accrued benefits that an employee takes out.  Because Plaintiff complains in Count One that age has a differential effect on what an employee takes out – but not what the employer puts in – he has failed to state a valid claim for violation of § 1054(b)(1)(H).").  Although the plaintiffs point out that some federal courts have disagreed with the Seventh Circuit's *Cooper* decision, *see, e.g., Parsons v. AT & T Pension Benefit Plan*, Civil Action No. 3:06CV552 (JCH), 2006 WL 3826694, at *1 (D. Conn. Dec. 26, 2006); *In re Citigroup Pension Plan ERISA Litig.*, 470 F. Supp. 2d 323, 341-45 (S.D.N.Y. 2006); *In re J.P. Morgan Chase Cash Balance Litig.*, 460 F. Supp. 2d 479, 488-90 (S.D.N.Y. 2006), *Cooper* is binding, of course, on this Court.  *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005); *Taco Bell Corp. v. Continental Cas. Co .*, 388 F.3d 1069, 1077 (7th Cir. 2004); *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, at *7 (N.D. Ill. Aug. 2, 2006).

The defendants' motion for judgment on the pleadings (Doc. 224) is **GRANTED** and Counts VII, VIII, and IX of the complaint in this cause are **DISMISSED with prejudice**.

**IT IS SO ORDERED.**
**DATED: September 13, 2007**

<u>s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**