IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GRANT M. WALKER, EDWARD ZERINGUE, and RICHARD W. DRAKE, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>MONSANTO COMPANY PENSION PLAN and MONSANTO COMPANY,<br><br>      Defendants.<br>_____<br>GLYNN DAVIS, EUGENE FORNERIS, and JUANITA HAMMOND, individually and on behalf of all those similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>SOLUTIA INC. EMPLOYEES' PENSION PLAN,<br><br>      Defendant.<br>_____<br>FRED DONALDSON, ALBERT WALTER III, MARY CLAWSON, SANDRA BELLON, AUDREY SOKOLOSKI, and CAROL THOMAS, individually and on behalf of all those similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>PHARMACIA CASH BALANCE PENSION PLAN, PHARMACIA CORPORATION, PHARMACIA & UPJOHN COMPANY, and PFIZER, INC.,<br><br>      Defendants. | Case No. 3:04-cv-436-JPG-PMF<br><br>CONSOLIDATED CLASS ACTION<br><br>Consolidated with:<br>Case No. 05-cv-736-JPG<br>Case No. 06-cv-3-JPG<br>Case No. 06-cv-139-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the joint motion for summary judgment on Counts

I, II and III filed by defendants Monsanto Company Pension Plan and Monsanto Company (collectively, "Monsanto"), Pharmacia Cash Balance Pension Plan, Pharmacia Corporation, Pharmacia & Upjohn Company and Pfizer, Inc. (collectively, "Pharmacia") and Solutia Inc. Employees' Pension Plan ("Solutia") (Doc. 284). The plaintiffs, on behalf of their respective classes, have responded to the motion (Doc. 294), and the defendants have replied to that response (Doc. 299). The Court also considers the plaintiffs' motion for summary judgment (Doc. 285) to the extent it seeks judgment on Counts I, II and III, the defendants' response to the plaintiffs' summary judgment arguments about Counts I, II and III (Doc. 293), and the plaintiffs' reply to that response (Doc. 297). The parties have submitted additional materials in connection with the pending motions (Docs. 314, 315, 316, 318 & 319), and on May 6, 2009, the Court held oral argument on the motions.

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). There are no factual disputes before the Court in relation to Counts I, II and III; the Court is only asked to decide legal issues to determine whether any party is entitled to judgment as a matter of law.

**I.     Background**

This matter involves an identical provision in the pension plans of defendants Monsanto Company Pension Plan, Pharmacia Cash Balance Pension Plan and Solutia Inc. Employees' Pension Plan. Because the relevant provision is identical, the Court will refer to all of the plans collectively simply as "the Plan." Furthermore, a single corporation was the predecessor of all

the defendant corporations, and the Court will refer to that entity at "Old Monsanto."

As of January 1, 1997, Old Monsanto converted its various existing traditional defined benefit pension plans to a single cash-balance defined benefit plan. In a traditional defined benefit plan, a participant is entitled to a certain benefit upon retirement such as, for example, a monthly annuity equal to a certain percentage of his highest annual earnings. A traditional defined benefit plan must provide that benefit regardless of the cost to the plan, so the employer bears the risk that the plan will not be adequately funded to pay the benefits. In a cash-balance defined benefit plan, each participant maintains a cash balance account on the books only – thus, it is often referred to as a "notional" account – to which credits can be added through the participant's working period based on his salary and "interest" on the notional account balance. Because the account is notional and contains no real dollars, the employer still bears the risk of not having sufficient assets to cover pension obligations, but Old Monsanto believed participants could more easily understand the value of a cash-balance benefit than a future pension expressed as a monthly payment amount. In 1996, before the conversion, Old Monsanto communicated the details of the conversion to its employees in a variety of ways and included detailed descriptions of how benefits that participants had accrued under the prior defined benefit plans would be treated in the conversion, which is described in more detail in the following paragraphs.

The conversion to a cash-balance plan was complicated because many employees who worked for Old Monsanto prior to January 1, 1997, had accrued benefits under the prior plans, and when those benefits were converted to the new Plan, Old Monsanto had to do so without reducing their value. To accomplish this, Old Monsanto converted an employee's accrued

3

benefit under a prior plan into a Prior Plan Account ("PPA").[1] It did this by determining the value at the time of conversion of the monthly annuity to which the employee would have been entitled under the prior plan at age 65 (the Plan's normal retirement age) based on the employee's then-current salary history and/or years of service, and multiplying that number by 125 to get a lump sum value for the employee's accrued benefit at the time of conversion (125 is the annuity conversion factor selected to approximate the average number of months an annuity would be paid). It then reduced the lump sum by 8.5% per year to its value at the age of the employee at the time of the transition to arrive at the employee's opening PPA balance, as described in § 6.2(b) of the Plan, which is further described in the following paragraph.

The magnitude of the reduction was impacted by Old Monsanto's decision to treat all participants as if they were entitled to a fully subsidized early retirement benefit at age 55 and a discounted early retirement benefit before age 55 (features of the Plan), even when they were not entitled to such benefits under their prior plans. The result was that each participant's lump sum accrued benefit under his prior plan was reduced 8.5% per year *for each year the employee was less than 55 years old*, not 65 years old. The resulting amount – the lump sum value of the employee's accrued benefit at the time of the conversion reduced by 8.5% for each year the employee was under 55 years of age – became the beginning PPA notional cash balance. Had Old Monsanto not extended the early retirement benefits to participants who had not been entitled to them under their prior plans, their lump sum accrued benefits would have been reduced *from age 65*. The Plan provided that the PPA balance would grow by 8.5% annually through "interest credits" so that by the time the participant reached age 55, the PPA balance

---

[1]The Plan also contained a Cash Balance Account ("CBA") for each participant where post-transition benefit accruals would be reflected. The CBA is not at issue in this litigation.

would be equal to the undiscounted lump sum value of the employee's accrued benefit under the prior plans at the time of conversion.[2]

The controversy in this litigation stems from § 6.2(d) of the Plan, which directs that "interest credits" be awarded to each participant's PPA at a rate of 8.5% per year until the participant reaches age 55, at which time the interest credit awards cease. The plaintiff classes claim that this provision violates the prohibition on age discrimination in § 204(b)(1)(H)(i) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(b)(1)(H)(i), and the Internal Revenue Code ("IRC"), 26 U.S.C. § 411(b)(1)(H)(i), and the prohibition on forfeiting benefits in § 203(a)(2) of ERISA, 29 U.S.C. § 1053(a)(2), and the IRC, 26 U.S.C. § 411(a)(2). The defendants argue that the cessation of interest credits to PPAs at age 55 is not discriminatory because the interest credits up to that time simply reversed the discount taken in the calculation of the beginning PPA cash balance to reflect the pre-55 early retirement feature of the Plan. In the defendants' view, once a participant reaches age 55, the discount will have been fully reversed by the annual 8.5% credits prior to age 55, and the PPA cash balance will be equal to the full, undiscounted lump sum value of the employee's accrued benefit under the prior plan as calculated at the time of the conversion. They further argue that the claims of the plaintiff classes are time-barred.

## II.     Analysis

The critical statutory provision is § 204(b)(1)(H)(i) of ERISA, 29 U.S.C. §

---

[2]The defendants note that the IRS issued favorable rulings with respect to the tax-qualified status of the Old Monsanto and Solutia plans. Although these rulings may be entitled to some respect under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), *see Hurlic v. Southern Cal. Gas Co.*, 539 F.3d 1024, 1034 (9th Cir. 2008), the Court does not rely on them in ruling on the pending motions.

1054(b)(1)(H)(i), which forbids age discrimination in benefit accrual by disqualifying from tax benefits any plan where "an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age."[3] The plaintiff classes claim that § 6.2(d) of the Plan[4] violates this provision because, by its plain terms, it stops the awarding of "interest credits" on the PPA balance when a participant turns 55 years old. They argue that the Plan must stand or fall on its face because it is unambiguous, and consideration of extrinsic evidence to interpret an unambiguous contract provision should not be allowed. On the other side, the defendants argue that the history and context of the PPA "interest credits" must be considered in order to understand their role in the Plan, that is, that they are not truly "interest" but the restoration of a discount taken at the time of the conversion.

A. Consideration of Extrinsic Evidence

The Court will consider extrinsic evidence to interpret § 6.2(d) of the Plan and to determine its place in the context of the entire Plan. Plan interpretation is governed by federal common law rules of contract interpretation. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001). Where a plan is unambiguous, that is, if it is susceptible to only one reasonable interpretation, it must be interpreted accordingly. However, where a plan is susceptible to more

---

[3]The IRC contains a provision identical to the cited ERISA provision. *See* 26 U.S.C. § 411(b)(1)(H)(i). For simplicity's sake, the Court will only refer to the ERISA provision in this order, although its ruling applies equally to the alleged IRC violations.

[4]Section 6.2(d) states:
> Interest Credits. For each month prior to the earlier of the first day of the month following the month in which the Participant attains age 55 or his Annuity Starting Date, a Participant's Prior Plan Account shall be credited with Interest Credits equal to the sum of (i) the Prior Plan Account on the first day of such month, and (ii) the Participant's Pay Credits credited for that month, if any, multiplied by 1.006822.

This calculation yields an annual interest of approximately 8.5%.

6

than one reasonable interpretation, the Court may consult extrinsic evidence in accordance with the plain language of the plan.

The plaintiff classes are correct that § 6.2(d) is unambiguous on its face when read in a vacuum. Its language viewed in an "ordinary and popular sense as would a person of average intelligence and experience," *Neuma*, 259 F.3d at 873, is clear: the Plan stops awarding interest credit when a participant turns 55. True interest credits for a cash-balance account are an accrued benefit to which a participant is entitled when he reaches normal retirement age and which therefore must be included when calculating a lump sum retirement benefit. *See Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 761 (7th Cir. 2003). Thus, under § 6.2(d)'s plain terms, the participant's accrual of interest credits ceases because the participant attains the age of 55, and § 6.2(d) violates ERISA's anti-discrimination provisions unless there is an ambiguity in the Plan.

The defendants argue that such an ambiguity is revealed when one considers the calculations used to arrive at the beginning PPA balance as described in § 6.2(b) of the plan,[5] the pre-conversion explanatory materials distributed to participants and the Plan's summary plan description ("SPD"). Considering such evidence, they argue, it becomes clear that the 8.5% "interest credits" are not truly interest at all but are instead a reversal of the discount taken during the conversion as described in § 6.2(b). Under their view, the Plan is not discriminatory because it ceases "interest credits" when a participant turns 55.

---

[5]Section 6.2(b) states, in pertinent part:
> The Prior Plan Account of a Participant . . . shall, as of January 1, 1997, be credited with an amount equal to the Actuarial Equivalent lump sum value of the Participant's Predecessor Plan Accrued Benefit . . . , discounted using an interest rate of eight and one-half percent per annum for each month, if any, by which the Participant's age as of January 1, 1997 precedes age 55. . . .

The doctrine of extrinsic ambiguity allows parties "to present extrinsic evidence to demonstrate that although the contract looks clear, anyone who understood the context of its creation would understand that it doesn't mean what it seems to mean." *Mathews v. Sears Pension Plan*, 144 F.3d 461, 466 (7th Cir. 1998). "The party claiming that a contract is ambiguous must first convince the judge that this is the case . . ., and must produce objective facts, not subjective and self-serving testimony, to show that a contract which looks clear on its face is actually ambiguous." *Murphy*, 61 F.3d at 565 (citations omitted); *accord Mathews*, 144 F.3d at 467. Where a plan is ambiguous, extrinsic evidence may be considered to determine the parties' intent. *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 279 (7th Cir. 1994).

Here, anyone who understood the context and history of the 8.5% "interest credit" would understand that it is not interest as the common person understands interest. Instead, the "interest credit" represents the reversal of the discount taken from the total lump sum value of a participant's accrued benefit at the time of the plan conversion. That Old Monsanto chose to call the incremental restoration of the discount "interest credits" instead of "reverse discount credits" or "subsidy credits" or some similar term is unfortunate in that it opened the door for confusion and, as this case bears out, for litigation. Nevertheless, consideration of other portions of the Plan and of objective extrinsic evidence such as the pre-conversion materials distributed to participants and the SPD is allowed to interpret the plan.

B.   Are "Interest Credits" Benefit Accruals?

The defendants argue that the cessation of "interest credits" at age 55 is not forbidden by ERISA § 204(b)(1)(H)(i)'s prohibition of cessation of "benefit accrual" because "interest credits" under the Plan are not "benefit accruals."

As both sides emphasized at oral argument, a "benefit accrual" is "what the employer

8

puts in (either in absolute terms or as a rate of change)" to increase the value of a participant's retirement benefit. *Cooper v. IBM Pers. Pension Plan*, 457 F.3d 636, 639 (7th Cir. 2006), *cert. denied*, 549 U.S. 1175 (2007); *Hurlic v. Southern Cal. Gas Co.*, 539 F.3d 1024, 1037 (9th Cir. 2008) ("The term "accrue" means "to increase." . . . "Benefit accrual" thus refers to the process by which benefits increase."). In the case of a cash-balance plan, the benefit accrual is the rate at which the employer imputes value to a participant's cash-balance account. *Cooper*, 457 F.3d at 639. This is to be distinguished from an "accrued benefit," which ERISA defines as an amount "expressed in the form of an annual benefit commencing at normal retirement age." ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A); *see Cooper*, 457 F.3d at 638.

The PPA "interest credits" are not "benefit accruals" because, although the employer imputes them to a participant's cash-balance PPA, the "interest credits" do not increase the value of the participant's age-65 retirement benefit that accrued prior to the conversion. The value of a participant's accrued benefit prior to conversion was and will always be the value of the monthly annuity to which a participant would have been entitled at age 65 had he stopped working at the time of the conversion expressed as a lump sum benefit. If the participant was 55 at the time of conversion, the lump sum benefit was not discounted at all in the beginning PPA balance, and the participant was entitled to the full value of his age-65 retirement benefit by virtue of the fully subsidized age-55 early retirement provision. If the participant was under 55 at the time of conversion, the beginning PPA balance was the accrued lump sum benefit discounted by 8.5% for each year the participant was under 55 to reflect a reduction in the early retirement subsidy (pre-55 retirement was only *partially* subsidized). The early retirement subsidy was then added back at a rate of 8.5% through "interest credits" until the PPA reached the value of the pre-1997 age-65 accrued benefit expressed as a lump sum benefit at the time of conversion – that is, 100%

9

of the participant's accrued benefit at the time of the conversion. The Plan simply reverses the pre-55 subsidy discount year by year as the participant approaches 55, the age at which he can receive a fully subsidized retirement benefit. The benefit accrued prior to conversion never changed; only the amount of the early retirement subsidy did.

The example cited in the defendants' brief and at oral argument is helpful to understand why "interest credits" under § 6.2(d) do not increase the value of a participant's pre-conversion accrued benefit (Doc. 286, Defs.' Mem. Supp. Summ. J. 23-24). In the example, Mary Doe was 50 years old at the time of conversion on January 1, 1997, and her accrued benefit under her prior plan was a monthly annuity payment beginning at age 65 of $1,000 based on her salary and years of service at the time of conversion. Mary's monthly annuity of $1,000 was multiplied by 125, the annuity conversion factor, to get the lump sum value of her accrued benefit at the time of conversion: $125,000. Because the Plan offered a fully subsidized early retirement benefit beginning at age 55, Mary would have been entitled to the entire lump sum benefit of $125,000 if she retired at age 55. However, had she retired at age 54, a year prior to her being entitled to a fully subsidized retirement benefit, she would have been entitled only to a discounted retirement benefit, and her lump sum benefit would have been reduced by 8.5%. Had she retired at 53, the reduction would have been a further 8.5%, and so on.

In the Plan, the 8.5% "interest credits" describe the calculation from another perspective. Instead of describing Mary's accrued age-65 benefit as $125,000 and providing that Mary would be entitled to 8.5% less per year if she chose to retire before 55, the Plan starts Mary off at the lowest possible lump sum to which she could be entitled under the discounted early retirement program – the lump sum to which she would have been entitled under the Plan had she retired at the time of conversion, that is, at age 50. It then restored the 8.5% subsidy until she reached a

10

PPA balance of $125,000, the lump sum value of her accrued benefit at the time of conversion, when she reached age 55. At all times from age 50 to 55, Mary's accrued benefit was $125,000; it was only the portion of that accrued benefit to which she was entitled that changed each year because she was able to take advantage of the increasingly larger retirement subsidy.

The Plan's 8.5% "interest credit" award until age 55 is indistinguishable from the pension payment increases at issue in *Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197 (8th Cir. 1992). In *Atkins*, a plaintiff class challenged their employer Northwest Airlines' pension plan that stopped awarding service credits, which were used along with the participant's earnings to calculate his accrued benefits, after a participant has accumulated 25 years of service and that reduced his pension amount if he retired before age 60, the plan's normal retirement age, to account for a projected longer payment period. *Id.* at 1200. The result was that a 55-year-old with 25 years of service credit received a lower monthly pension payment than a 60-year-old with the same years of service and the same earnings, but that the 60-year-old's pension would not increase if he continued to work beyond age 60. *Id.* The plaintiff class argued that the failure of the incremental pension payment increases before age 60 to continue after age 60 violated the same anti-age discrimination provision at issue in this suit, ERISA § 205(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), as well as other age discrimination laws. *Id.* at 1199. They asked the Court to require the Northwest plan to invert the early retirement discount so that it became a "late retirement bonus" if a participant continued to work beyond age 60 at the same rate that the early retirement discount was reversed before a participant turned 60. *Id.* at 1200.

The Eighth Circuit Court of Appeals held that since ERISA did not forbid service caps or early retirement discounts, it did not require Northwest's plan to award a "late retirement bonus"

to employees who worked beyond 60 even if their total benefit was actuarially less than an employee who retired at age 60. *Id.* It concluded that the cessation of the monthly pension increases beyond age 60 simply reflected the exhaustion of an early retirement benefit, not improper age discrimination. *Id.* at 1201. It further noted that similarly situated participants (i.e., those with 25 years of service and the same earnings) had the same accrued benefit – the amount of pension payment to which they would be entitled *at normal retirement age* – no matter when they actually retired. *Id.* Therefore, the discontinuation of the early retirement discount reversal at age 60 had no effect on a participant's accrued benefit and was not discriminatory under ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i). *Id.* Because the reversing of the early retirement discount and the cessation of that reversal once the discount was fully reversed did not increase a participant's accrued benefit, it did not constitute a "benefit accrual" under *Cooper*.

The plaintiffs attempt to distinguish *Atkins* by noting that the *Atkins* early retirement discount reversal continued until the normal retirement age of 60, not an earlier retirement age as in the case at bar. This is immaterial. In both *Atkins* and the case at bar, the discount was reversed until the participant was eligible for a full retirement benefit, at which point the discount reversal ceased. In *Atkins*, which provided for no fully-subsidized early retirement benefit, that occurred at the normal retirement age of 60; in this case, where there is a fully-subsidized early retirement benefit, that occurs at age 55, when a participant is eligible for that benefit.

The plaintiff classes also point to *Hurlic v. Southern California Gas Company*, 539 F.3d 1024 (9th Cir. 2008), in support of their position that the "interest credits" awarded are benefit accruals because they increase the value of the participants' retirement accounts. In *Hurlic*, as in

12

this case, a pension plan was converted from a traditional defined benefit plan to a cash balance plan. *Id.* at 1027. At the conversion, the initial balance of each participant's retirement account was set at the actuarial equivalent of the participant's accrued benefit under the prior plan, and interest credits were added to that balance at a predetermined rate subsequent to the plan conversion. *Id.* The *Hurlic* court had occasion to consider the difference in benefit accruals in traditional defined benefit plans as compared to cash balance plans, noting that in a traditional defined benefit plan, benefits accrued – or increased – according to a formula based on salary history and years of service and that in a cash balance plan, benefits accrued – or increased – with the award of earnings and interest credits. *Id.* at 1037.

*Hurlic* is readily distinguishable from the case at bar because the credits at issue in each case are of an entirely different nature, although they are both labeled "interest credits." In *Hurlic*, no early discounted early retirement benefit was involved, and the interest credits represented additions to the accrued benefit of each participant. After each interest credit was awarded, a participant's accrued benefit was larger. However, as explained earlier in this order, the "interest credits" in this case did not increase the accrued benefit in any participant's PPA. Were the "interest credits" awarded under the Plan in this case truly interest instead of the reversal of an early retirement discount, the plaintiffs' position would have some merit. However, the "interest credits" in this case are indistinguishable from those in *Atkins* and of a completely different nature than those in *Hurlic*.

The plaintiff classes in this case essentially ask the Court to impose a "late retirement bonus" of 8.5% per year for participants who work beyond 55, the age at which they could first take a fully subsidized early retirement. However, as demonstrated in *Atkins*, the reversal of an early retirement discount that ceases when the discount is fully reversed at a certain age is not

13

age discrimination and does not violate ERISA § 204 (b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

      C.      <u>Do "Interest Credits" Cease Because of a Participant's Age?</u>

Using the same reasoning, the defendants argue that, although the plain terms of the Plan state that "interest credits" cease at age 55, the "interest credits" cease not because of age but because the early retirement discount has been fully restored, which happens to coincide with the participant reaching age 55. Thus, the attainment of age 55 is not the *reason* the "interest credits" cease; it simply *perfectly correlates* with the reason the "interest credits" cease.

While it is unlawful to discriminate on the basis of age, it is not necessarily unlawful to discriminate on the basis of other characteristics that correlate with age. *Cooper v. IBM Pers. Pension Plan*, 457 F.3d 636, 642 (7th Cir. 2006) (years of interest available until retirement) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611-12 (1993) (pension status/years of service)), *cert. denied*, 549 U.S. 1175 (2007). When a plaintiff claims age discrimination under ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), he must "demonstrate that the complained-of effect is *actually* on account of age," not some other factor that correlates with age. *Cooper*, 457 F.3d at 642; *see Kentucky Ret. Sys. v. EEOC*, 128 S. Ct. 2361, 2366 (2008) (ADEA context). It is only where the correlated factor serves as a "proxy for age" that the effect will be deemed unlawfully discriminatory. *Kentucky Ret. Sys.*, 128 S. Ct. at 2367 (citing *Hazen Paper*, 507 U.S. at 613). Generally, age and pension status are analytically distinct concepts, although pension status often turns on a pension plan participant's age. *Kentucky Ret. Sys.*, 128 S. Ct. at 2367.

*Kentucky Retirement Systems v. EEOC*, 128 S. Ct. 2361 (2008), provides a perfect example of the analytical distinction between age and retirement status. That case arose because Kentucky's retirement system imputed unearned years of service credits to certain workers who became disabled and who were not eligible for retirement but did not impute such credits to otherwise similarly

14

situated workers who were already eligible for retirement. *Id.* at 2365. Years of service was a component of the pension benefit calculation, so the plan was effectively more generous to those who were not yet eligible for retirement than it was to those who were. *Id*. The EEOC argued that the plan discriminated on the basis of age because a worker like the plaintiff with at least five years of service who became disabled after age 55 received no imputed years of service but a similarly situated worker under 55 would have. *Id.* The Supreme Court concluded that the decision to impute additional years of service was non-discriminatory because it was made based on pension status, not age, although the result was that a worker under 55 received imputed years and worker 55 or older did not. *Id.* at 2369.

Here, as explained in the previous section of this order, there is no evidence showing the cessation of PPA "interest credits" at age 55 was age discrimination and that pension status was a proxy for age. Nothing in the record indicates the early retirement discount reversal designed to provide a fully subsidized early retirement benefit at age 55 was "based on a 'prohibited stereotype' of older workers, . . . produce[d] any 'attendant stigma' to those workers, [or was] 'the result of an inaccurate and denigrating generalization about age,'" the evils age discrimination statutes were designed to remedy. *Kentucky Ret. Sys.*, 128 S. Ct. at 2366-67. On the contrary, it is clear that the Plan's decision to stop awarding "interest credits" was "actually motivated" by the fact that the early retirement discount became fully reversed at the fully subsidized early retirement age, that is, the participant's pension status. That this happens to occur without fail when a participant turns 55 (the date a participant can obtain a fully subsidized early retirement benefit) and that the Plan chose to describe the reversal point in terms of a participant's age instead of the attainment of a full early retirement subsidy does not make the cessation "because of the attainment of any age."

*Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197 (8th Cir. 1992), discussed in the prior

15

section of this order, is completely consistent with this conclusion. In that case, the early retirement discount expired at normal retirement age – a pension status which happened to occur invariably at age 60 – and was discontinued. *Id.* at 1200. The Court of Appeals found the cessation of the reduction to be proper because it did not "result from age discrimination," but instead "merely reflect[ed] that the early retirement discount [was] exhausted." *Id.* at 1201.

In the case at bar, the relevant pension status occurs at age 55 when a participant is eligible for a fully subsidized early retirement. Under *Kentucky Retirement Systems* and consistent with *Atkins*, the cessation of a discount reversal at the achievement of that pension status does not violate ERISA § 204 (b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), because it is not "because of the attainment of any age."

In light of the foregoing, it is unnecessary to address the parties' other arguments regarding whether the Plan complies with § 204(b)(1)(H)(i) of ERISA, 29 U.S.C. § 1054(b)(1)(H)(i), and whether these consolidated actions were filed within the applicable statute of limitations.

## III.   Conclusion

For the foregoing reasons, the Court **GRANTS** the defendants' motion for summary judgment on Counts I, II and III (Doc. 284), **DENIES in part** the plaintiff's motion for summary judgment (Doc. 285) to the extent it seeks judgment on Counts I, II and III and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  June 11, 2009**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **United States District Judge**