IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GRANT M. WALKER, EDWARD ZERINGUE, and RICHARD W. DRAKE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MONSANTO COMPANY PENSION PLAN and MONSANTO COMPANY,<br><br>Defendants.<br>―――――――――――――――――――<br>GLYNN DAVIS, EUGENE FORNERIS, and JUANITA HAMMOND, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOLUTIA INC. EMPLOYEES' PENSION PLAN,<br><br>Defendant.<br>―――――――――――――――――――<br>FRED DONALDSON, ALBERT WALTER III, MARY CLAWSON, SANDRA BELLON, AUDREY SOKOLOSKI, and CAROL THOMAS, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHARMACIA CASH BALANCE PENSION PLAN, PHARMACIA CORPORATION, PHARMACIA & UPJOHN COMPANY, and PFIZER, INC.,<br><br>Defendants. | Case No. 3:04-cv-436-JPG-PMF<br><br>CONSOLIDATED CLASS ACTION<br><br>Consolidated with:<br>Case No. 05-cv-736-JPG<br>Case No. 06-cv-3-JPG<br>Case No. 06-cv-139-JPG |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment on Count X

filed by defendants Monsanto Company Pension Plan and Monsanto Company (collectively, "Monsanto") (Doc. 282). Plaintiff Edward Zeringue, class representative, has responded to the motion (Doc. 295), and Monsanto has replied to that response (Doc. 298). The Court also considers the plaintiffs' motion for summary judgment (Doc. 285) to the extent it seeks judgment on Count X, Monsanto's response to the plaintiffs' summary judgment arguments about Count X (Doc. 293), and the plaintiffs' reply to that response (Doc. 297).

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). There are no factual disputes before the Court in relation to Count X; the Court is only asked to decide legal issues to determine whether any party is entitled to judgment as a matter of law.

**I.     Background**

This dispute arises out of a provision in the Monsanto Company Pension Plan ("Plan") regarding calculation of interest credits where a participant elects to receive his pension in a lump sum but that lump sum is paid a month or more after it becomes payable under the Plan. The account at issue is the Prior Plan Account[1] ("PPA"), one of the factors used to determine the amount of the lump sum benefit. The Plan provision at issue states:

> If a Participant elects to receive his Accounts as a Lump Sum and such Lump

---

[1]The account was named the Prior Plan Account because it represents the value of a participant's accrued benefit under Monsanto's prior traditional defined benefit plan when the prior plan was transitioned into a cash balance plan. That transition is not relevant to the pending motions addressed in this order.

>Sum is paid to the Participant after the calendar month containing the
>Participant's Annuity Starting Date, his Prior Plan Account . . . shall be credited
>with Interest Credits in accordance with Section 6.2(d) (regardless of the
>Participant's age) . . . for each complete calendar month in the period beginning
>on the first day of the month containing his Annuity Starting Date and ending on
>the first day of the month in which the Lump Sum distribution is made to the
>Participant.

Plan, § 7.3(e)(v) (2002).[2] Section 6.2(d), in turn, states that a PPA shall be credited monthly with interest credits at an annual rate of 8.5%.

The Plan's summary plan description ("SPD") describes the awarding of interest credits to a PPA in connection with a lump sum benefit payment as follows:

>Your first payment may be delayed for at least one month to allow for payment
>processing. . . . If you select a Lump Sum Benefit, your payment will include
>interest on the amount of your Lump Sum Benefit, for the period from your
>benefit commencement date to the date of payment, at an annual rate equal to the
>average yield of 30-year Treasury Bonds for October of the prior year.

SPD at 6 (2002). It further states:

>You may also elect to defer receipt of your benefit under the Pension Plan. . . .
>During the deferral period, your Prior Plan Account (until age 55) . . . continue[s]
>to receive interest credit.

SPD at 8 (2002).

Throughout its life, the Plan administrator has awarded interest credits at a rate of 8.5% for periods where a lump sum benefit payment was delayed because a participant voluntarily elected to defer receipt of the lump sum benefit to a later date (a "deferral"). However, the Plan administrator has historically awarded interest credits at the lower 30-year treasury bond rate for periods where a lump sum benefit was delayed because of an administrative or processing delay (an "administrative delay").

---

[2]The 2002 version of the Plan was in effect when Zeringue at his Annuity Starting Date on January 1, 2002, and when he received his lump sum pension payment on March 1, 2002.

3

Zeringue's payment was delayed for two months due to administrative processing. Consistent with its past practice, the Plan awarded him interest credits at the 30-year treasury bond rate (5.32% for 2002) instead of at 8.5%. His fellow class members experienced similar administrative delays and interest calculations or are subject to such administrative delays and interest payments should they choose a lump sum benefit.

The Employee Benefits Plans Committee ("EBPC"), the Plan administrator, heard appeals of the decision to award interest credits during administrative delays at the treasury bond rate instead of at 8.5%. Under the Plan, the EBPC is authorized to exercise its discretion to determine eligibility for benefits and to interpret the Plan. *See* Plan, § 10.1(d) (2002); SPD at 22 (2002). The Plan further provides that the EBPC's fiduciary actions are subject to review "only if without a rational basis." Plan § 10.1(h).

On July 25, 2005, the EBPC issued a letter rejecting the claims requesting application of the higher interest rate during periods of administrative delays. *See* Letter from Schopp to Marker of 7/25/05 ("EBPC Claims Decision"), at 7-8. In its decision, the EBPC noted that the EBPC has consistently interpreted § 7.3(e)(v) of the Plan to mean that a participant who elects to defer receipt of a lump sum benefit will receive interest credits on his PPA account pursuant to § 6.2(d) (i.e., at an annual rate of 8.5% until age 55) but that a participant whose lump sum benefit is delayed due to administration or processing will receive interest credits in accordance with the aforementioned provision of the SPD (i.e., at the annual 30-year treasury bond rate from the prior October). The EBPC concluded that in each of the claims, interest credits were awarded "in accordance with the provisions of the Plan and/or the SPD." EBPC Claims Decision, at 8. The EBPC denied the appeal of its original decision for the reasons cited in the original decision. *See* Letter from Schopp to Marker of 11/8/05, at 1.

Zeringue, on behalf of a class of plaintiffs, brings a claim under the Employee Retirement Income Security Act ("ERISA") § 502(a)(3), 29 U.S.C. § 1132(a)(3), seeking a declaration that the Plan has improperly computed their benefits and an injunction forcing them to recalculate and create a common fund to pay the proper benefits. Alternatively, the plaintiffs bring a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), seeking to recover benefits due under the Plan.

## II. Analysis

Clearly, this case centers on § 7.3(e)(v) of the Plan. When interpreting a plan governed by ERISA, the Court looks to federal common law rules of contract interpretation. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001). Those rules require a plan to be interpreted "in an ordinary and popular sense as would a person of average intelligence and experience." *Id.* (internal quotations omitted). One of the key questions is whether the plan is ambiguous, that is, if it is susceptible to more than one reasonable interpretation. *Id.*

Where a plan provision is ambiguous and a plan administrator has discretion to interpret the plan, the Court will overturn the plan administrator's decision only if it is arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (§ 1132(a)(1)(B) action). Under the arbitrary and capricious standard, in the absence of special circumstances such as fraud or bad faith, the Court will uphold a plan administrator's decision "so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 (7th Cir. 1996); *accord Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 810 (7th Cir. 2006). If the plan administrator "makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, *i.e.,* one that makes a 'rational connection' between the

issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached," then the plan administrator's decision will not be reversed. *Exbom v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990).

However, unambiguous terms of a pension plan – that is, those that are susceptible to only one reasonable meaning – leave no room for the exercise of interpretive discretion by the plan's administrator." *Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 822-23 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 2900 (2008). A plan administrator, even one given discretion to interpret the plan, simply must discharge his duties with respect to the plan "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), and an interpretation that controverts the unambiguous terms of a plan is arbitrary and capricious. *Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996).

Section 7.3(e)(v) is unambiguous on its face. Its language viewed in an "ordinary and popular sense as would a person of average intelligence and experience," *Neuma*, 259 F.3d at 873, is clear: PPA interest credits are to be awarded pursuant to § 6.2(d) – that is, at an annual rate of 8.5% – if a lump sum benefit "is paid to the Participant after the calendar month containing the Participant's Annuity Starting Date. . . ." Monsanto implies that § 7.3(e)(v) is ambiguous on its face because it fails to specify whether it applies to deferrals, administrative delays or both. This argument has no merit. On its face, § 7.3(e)(v) is not limited to deferrals. Thus, its broad language is only susceptible to meaning that § 7.3(e)(v) includes *any* occasion where "such Lump Sum is paid to the Participant after the calendar month containing the Participant's Annuity Starting Date. . . ." An EBPC decision to apply § 7.3(e)(v) only to deferrals and not to administrative delays is inconsistent with the Plan as a matter of law and therefore cannot be upheld as a reasonable interpretation of the plain language of the Plan unless

6

there is an extrinsic ambiguity in the Plan.

Monsanto argues that the EBPC's decision is a reasonable interpretation of an extrinsic ambiguity in § 7.3(e)(v) that is revealed when the Plan is viewed in light of the concrete circumstances in which it was drafted. Monsanto believes that in light of the extrinsic ambiguity, the EBPC was entitled to consult extrinsic evidence – the SPD and the Plan's past practices – to clarify the ambiguity. Monsanto argues that because the Plan gives the EBPC discretion to make such interpretations, the arbitrary and capricious standard applies, and the EBPC's decision satisfies the arbitrary and capricious standard.

The doctrine of extrinsic ambiguity allows parties "to present extrinsic evidence to demonstrate that although the contract looks clear, anyone who understood the context of its creation would understand that it doesn't mean what it seems to mean." *Mathews v. Sears Pension Plan*, 144 F.3d 461, 466 (7th Cir. 1998). "The party claiming that a contract is ambiguous must first convince the judge that this is the case . . ., and must produce objective facts, not subjective and self-serving testimony, to show that a contract which looks clear on its face is actually ambiguous." *Murphy*, 61 F.3d at 565 (citations omitted); *accord Mathews*, 144 F.3d at 467. Where a plan is ambiguous, a plan administrator may consult extrinsic evidence, including past practices, to determine the parties' intent. *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 279 (7th Cir. 1994).

For example, in *Mathews*, a class of retirees sued Sears' pension plan based on the discount rate applied to calculate the present value – and thus a lump sum benefit – of future annuity payments the retiree would have received had he later taken an annuity instead of a lump sum. *Mathews*, 144 F.3d at 464. The Sears pension plan stated that it would use the discount rate calculated monthly by the Pension Benefit Guaranty Corporation ("PBGC") that was

7

applicable "as of the date of distribution." *Id.* In practice, the pension plan actually used the PBGC rate applicable on January 1 of the year in which the employee retired, and the pension plan's summary plan description reflected this practice. *Id.* The Court of Appeals found that, while "as of the date of distribution" on its face unambiguously meant the rate applicable the month after the employee retired, objective extrinsic evidence revealed the phrase as ambiguous. *Id.* at 466. The objective external evidence included a Department of Treasury regulation that used "as of the date of distribution" as a term of art to mean *either* the rate applicable when the retiree receives the lump sum benefit *or* the rate applicable on January 1 of the year the retiree receives the lump sum. *Id.* at 467. Thus, the Treasury regulation suggested "a technical legal meaning different from [the phrase's] ordinary meaning," and supported an extrinsic ambiguity. *Id.* That the plan administrator construed the plan to employ the technical legal meaning of "as of the date of distribution" was reinforced by Sears' consistent past practice and summary plan description. *Id.* at 468. The Court ultimately found the plan administrator properly exercised its discretion to interpret an extrinsic ambiguity considering extrinsic evidence. *Id.* at 469.

Monsanto asks the Court to consider extrinsic evidence – the SPD and its past practice – to find an extrinsic ambiguity in the Plan that would allow the EBPC to interpret § 7.3(e)(v) as it has. It is true that the SPD and its past practices are the type of objective evidence the Court may consider when an extrinsic ambiguity exists. *See, e.g., Mathews*, 144 F.3d at 768. They may also be used to establish the existence of an extrinsic ambiguity. However, in this case, there simply is no extrinsic ambiguity, even considering that extrinsic evidence. The Plan's language is clear, and understanding the context of the Plan and any "terms of art" used therein does not make it any less so. The extrinsic evidence cited by Monsanto does not reveal the plan to mean anything other than what it appears on its face to mean. On the contrary, the extrinsic

8

evidence merely shows that the Plan has consistently misapplied § 7.3(e)(v) by inserting limiting provisions that just are not there.

As for the SPD, Monsanto claims that the EBPC's decision to interpret the plan to be consistent with the SPD is reasonable because the SPD's description of the plan governs over the Plan itself when there is a conflict between the two. This rule is true, however, *only* when a participant reasonably relies on the SPD to his detriment. *Schwartz v. Prudential Ins. Co.*, 450 F.3d 697, 699 (7th Cir. 2006); *see also* SPD at 26 (2002) ("In the event that a provision in the [Plan] conflicts with the Summary Plan Description, the terms of the plan document shall control."). Here, there is no contention that the plaintiff class reasonably relied on the SPD to their detriment.

In sum, the EBPC's decision to interpret § 7.3(e)(v) to apply only to deferrals and not to administrative delays is unreasonable and has no rational connection to the Plan. Therefore it is arbitrary and capricious and cannot stand.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Monsanto's motion for summary judgment on Count X (Doc. 282) and **GRANTS in part** the plaintiff's motion for summary judgment (Doc. on count X (Doc. 285) to the extent it seeks judgment on Count X. The Court further **DECLARES** the Plan's practices of interpreting § 7.3(e)(v) of the Plan to apply only to deferrals and not to administrative delays to be unlawful and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case. Further proceedings necessary to determine the propriety and scope of injunctive or other relief to be awarded to the plaintiff class should proceed in accordance with Magistrate Judge Frazier's September 29, 2008, order (Doc. 302). *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (requiring four-part analysis

of factors supporting injunctive relief); *Sierra Club v. Franklin Co. Power of Ill.*, 546 F.3d 918, 935-36 (7th Cir. 2008), *petition for cert. filed*, 77 U.S.L.W. 3610 (U.S. Apr. 20, 2009) (No 08-1304).  The Court further **ORDERS** that a telephone status conference shall be held on August 13, 2009, at 9:00 a.m.  The plaintiffs are responsible for placing the conference call.  The Court's telephone number is 618-439-7720.

**IT IS SO ORDERED.**
**DATED:  June 11, 2009**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **United States District Judge**